UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. ROBERT J. TASHJIAN,<br><br>    Plaintiff,<br><br>v.<br><br>DEUTSCHE BANK, et al.,<br><br>    Defendants. | CIVIL ACTION<br>NO. 19-cv-40074-DHH |

## ORDER ON MOTION TO PROCEED IN FORMA PAUPERIS AND REPORT & RECOMMENDATION ON MOTIONS TO DISMISS

**February 23, 2021**

**Hennessy, M.J.**

On June 4, 2019, *pro se* plaintiff Dr. Robert J. Tashjian ("Tashjian") commenced this action by filing a complaint and a motion for leave to proceed *in forma pauperis*. He brings this action against five defendants: Deutsche Bank; Bank of New York Mellon ("New York Mellon"); Shellpoint Mortgage Servicing ("Shellpoint"); Ocwen Mortgage Loan Servicing, LLC ("Ocwen"); and Korde and Associates, P.C. ("Korde"). According to Tashjian, the defendants have acted unlawfully regarding foreclosure proceedings of two properties in West Boylston, Massachusetts: 77 Lee Street ("77 Lee") and 363 Prospect Street ("363 Prospect"). Tashjian characterizes the action as one for relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").

Although summonses have not issued pending resolution of the filing fee and review of the complaint pursuant to 28 U.S.C. § 1915(e)(2), all the defendants, with the exception of New York Mellon, have appeared and moved to dismiss for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court will allow the motion for leave to

proceed *in forma pauperis* and will recommend to the District Judge that the motions to be dismiss be granted and that the claims against New York Mellon be dismissed *sua sponte*.

I.  **Background**

   A.  **Prior Actions**

Tashjian's present complaint is best understood in the context of earlier actions concerning 77 Lee, 363 Prospect, and other properties previously owned or controlled by the now-defunct Malden Brook Farm, LLC ("MBF"). According to Tashjian's earlier filings in this Court, MBF was a venture of Tashjian and his sister, Dr. Helen Tashjian ("Helen"). In an earlier-filed complaint, Tashjian represented that "[t]he original Malden Brook Farm was about 300 acres in both Holden and West Boylston, MA." *Tashjian v. Korde & Assoc., P.C.*, C.A. No. 17-40090-TSH (D. Mass.) (ECF No. 3 at 3). The land parcels which constituted MBF included 77 Lee and 363 Prospect in West Boylston. *Id.* Tashjian "and [his] late sister Helen . . . borrowed funds to achieve the national mission of preparation and response in event of biological, chemical, or nuclear attack." *Id.*[1] Tashjian further stated that "[t]he geology and agriculture of Malden Brook Farm [were] excellent for this purpose." *Id.*.

   1.  **Bankruptcy Action**

On May 24, 2010, MBF, through counsel, filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts. *See In re Malden Brook Farms LLC*, Case No. 10-42617-CJP (Bankr. D. Mass.). MBF included 77 Lee and 363 Prospect in its list of assets filed with the bankruptcy court. *Id.* (ECF No. 13 at 9). On July 28, 2011, the bankruptcy court allowed the trustee to sell nine real properties of the bankruptcy estate,

---

[1] Tashjian has represented that his sister Helen died on August 26, 23, 2014. *See Tashjian v. Korde & Assoc., P.C.*, C.A. No. 17-40090-TSH (D. Mass.) (ECF No. 3 at 2).

2

including a portion of 77 Lee, to Dennis Minnich.[2] *Id.* (ECF No. 107). On July 20, 2012, the action was converted to a Chapter 7 proceeding, requiring the liquidation of MBF's non-exempt assets to settle its debts. *Id.* (ECF No. 255); 11 U.S.C. §§ 721-727.

### a.   77 Lee Street

On January 4, 2016, Deutsche Bank filed a motion in which it represented that in 2005, Helen executed a note in the original principal amount of $200,000.00 to Argent Mortgage Company, LLC, secured by a mortgage on 77 Lee. Deutsche Bank further represented that the note and mortgage had since been assigned to it, and that the note and mortgage had been in default since November 1, 2010. Deutsche Bank moved for relief from the automatic stay provisions of 11 U.S.C. § 362 so that it could exercise its rights under the mortgage given by Helen with respect to 77 Lee Street. *Id.* (ECF No. 550)

On January 14, 2016, the trustee filed a response to Deutsche Bank's motion in which he stated that the portion of the 77 Lee mortgaged to secure Deutsche Bank's note had been conveyed from MBF to Helen just before she had executed the note and mortgage in question. The trustee further stated that the portion of 77 Lee securing the note was not, nor had ever been, part of the MBF bankruptcy estate, and that the same parcel had been excluded from the July 28, 2011 private sale. *Id.* (ECF No. 551). Deutsche Bank withdrew its motion shortly thereafter. *Id.* (ECF No. 560).

### b.   363 Prospect Street

On March 25, 2016, New York Mellon, by its serving agent Shellpoint, filed a motion for relief from the automatic stay provisions of 11 U.S.C. § 362 with regard to its interest in 363

---

[2] In his filings before this and the Bankruptcy Court, Plaintiff has alternatively referred to the West Boylston Police Chief as Dennis Minnich or Dennis Minnick. A review of the Town of West Boylston's website reveals that the correct spelling is Minnich and this spelling shall be utilized throughout this order. *See* https://www.westboylston-ma.gov/police-department.

Prospect.  According to the motion, in December 2004, when Helen Tashjian held the deed for 363 Prospect, she executed a note secured by a mortgage on 363 Prospect.  New York Mellon and Shellpoint further represented that, in April 2005, Helen conveyed her interest in 363 Prospect to MBF.  New York Mellon stated that it was the holder of the mortgage, and that the note and mortgage had been in default since November 1, 2010.  *Id.* (ECF 565).

The trustee, who noted he had previously filed a notice of abandonment of the property, did not oppose the motion.  *Id.* (ECF No. 566).  On April 25, 2016, the bankruptcy court granted New York Mellon and Shellpoint's motion.  *Id.*  (ECF No. 567).

The MBF bankruptcy action was closed in May 2017 upon the bankruptcy court's approval of the trustee's final report and account.  *Id.* (ECF Nos. 600, 601).

2. ***Tashjian v. Korde & Associates, PC*, C.A. No. 17-40090-TSH**

On June 9, 2017, Tashjian filed in this Court a complaint against Korde, *Tashjian v. Korde & Associates, PC*, C.A. No. 17-40090-TSH (D. Mass.) ("*Tashjian I*"), alleging in the complaint that, over six years earlier, he and Helen had "made the decision to enter into what was assumed to be a short-term bankruptcy that involved a predator mortgage lender" and West Boylston Police Chief Dennis Minnich, Sr.  *Id.* (ECF No. 3 at 1).  Tashjian claimed the result of this decision was "devastating as Chief [Minnich] acquired the farm piece by piece that involves mortgage serving fraud and self-dealing of a non-profit."  *Id.* (ECF No. 3 at 1).  Tashjian maintained there were improper agreements between the bankruptcy trustee and the police chief, which "evolved [into] mortgage servicing fraud and insurance fraud."  *Id.* (ECF No. 3 at 2).

Tashjian alleged that Korde was wrongfully foreclosing on 363 Prospect Street.  After the Court denied Tashjian's emergency motion to stop the foreclosure, Korde moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  In its memorandum in support of the motion, Korde argued that Tashjian had not made any factual allegations against

4

Korde itself, and that, under state law, a law firm representing a mortgagee in connection with a foreclosure owes no duty to the mortgagor. *Id.* (ECF No. 18). On June 30, 2017, Tashjian filed a "Voluntary Motion to Dismiss" in which he said that he would voluntarily agree to the dismissal of the action but that he wanted a criminal investigation into the alleged misconduct of Korde and other parties allegedly involved in the sale of the MBF properties. *Id.* (ECF No. 19). In an electronic order dated February 26, 2018, the Court granted Korde's motion to dismiss as follows:

> For the reasons stated in the Defendant's brief, specifically because Defendant owed Plaintiff no duty, and because the Plaintiff voluntarily consented to the Defendant's dismissal, the Defendant's Motion to Dismiss [17] is granted, without prejudice. The [P]laintiff's motion to dismiss [19] is granted insofar as the Plaintiff consents to the dismissal of the Defendant. However, the Plaintiff's request for this Court's immediate participation in the criminal investigation and prosecution is denied because this request exceeds the authority of this Court.

*Id.* (ECF No. 23). Tashjian did not appeal the dismissal of this action.

### 3. *Tashjian v. Minnich, et al.*, C.A. No. 17-40117-TSH

On August 11, 2017, not long after he had filed his voluntarily motion to dismiss in *Tashjian I*, Tashjian commenced another action concerning the MBF properties and related matters. *See Tashjian v. Minnich, et al.*, C.A. No. 17-40117-TSH (D. Mass.). Tashjian named ten defendants, including Korde, Shellpoint, and Ocwen. As he did in his earlier action, Tashjian alleged fraud and other misconduct in relation to the MBF bankruptcy proceedings, the sale of the MBF properties during the bankruptcy proceedings, and the pending foreclosure proceedings on the properties securing the mortgages. *Id.* (ECF No. 1).

Tashjian alleged, *inter alia*, "[t]here has been little choice but to file this lawsuit at this time to make absolutely certain no further attempts are made to foreclose on the remaining properties of the Plaintiff and 363 Prospect St. and 77 Lee St., West Boylston." *Id.* (ECF No. 1 at 3). He further alleged that Korde was aware of "fraud complications and the very unclear

5

mortgage of 363 Prospect Street, yet [Korde] proceeded to attempt a foreclosure on June 16, 2017." *Id.* (ECF No. 1 at 3). Tashjian's sole allegation mentioning Shellpoint was identifying Shellpoint as the entity "responsible for all final decisions of the 363 Prospect St. mortgage and I intend to continue communication with Shellpoint as the civil complaint continues." *Id.* (ECF No. 1 at 5). The plaintiff's only allegation specifically mentioning Ocwen was that it was the "mortgage holder for 77 Lee Street, West Boylston, and the Estate of Helen E. Tashjian." *Id.* (ECF No. 1 at 7).

Korde, Shellpoint, and Ocwen filed motions to dismiss for failure to state a claim upon which relief can be granted. *Id.* (ECF Nos. 38, 41, 35). In electronic orders dated February 22, 2018, the Court granted these motions to dismiss. *Id.* (ECF No. 55, 56, 57). On appeal, the First Circuit affirmed the orders of dismissal and issued its mandate on October 3, 2018. *Id.* (ECF Nos. 71, 72).

### 4.     *Tashjian v. Minnich, et al.*, C.A. No. 19-40012-TSH

On January 15, 2019, Tashjian commenced an action, *Tashjian v. Minnich, et al.*, C.A. No. 19-40012-TSH (D. Mass.), against Korde and four other defendants who are not parties to the present action. In his complaint, Tashjian characterized the action as one under RICO. *Id.* (ECF No. 1). The complaint contained only three allegations specifically mentioning Korde. Tashjian claimed that if Korde "attempts to foreclose and sell, anyone who purchases must clearly understand they have joined a conspiracy." *Id.* (ECF No. 1 at 6). The plaintiff further claimed that another one of the MBF properties may have contaminated water that could "spill over 363 property" and that if Korde "continues to pursue the eviction process, misrepresenting the facts, it is one more count of LEGAL MALPRACTICE." *Id.* (ECF No. 1 at 18).

On June 11, 2019, the Court issued an order in which it found that the complaint failed to state a claim upon which relief may be granted. More specifically, the Court found that

Tashjian's complaint neither provided a "short and plain" statement of his claim nor included sufficient factual material from which the Court could reasonably infer that the defendants were liable under the RICO statute. *Id.* (ECF No. 11 at 5). After allowing Tashjian to file an amended complaint, on August 29, 2019, the Court subsequently held that the amended pleading did not cure the prior pleading deficiencies and dismissed the action for failure to state a claim upon which relief may be granted. *Id.* (ECF Nos. 12, 14). On April 28, 2020, the First Circuit affirmed the dismissal. *Id.* (ECF No. 22).

    **B.**    **Present Action**[3]

On June 4, 2019, Tashjian commenced the present action, *Tashjian v. Deutsche Bank*, 19-40074-DHH (D. Mass.).[4] The body of the complaint is fourteen pages long, followed by 185 pages of exhibits. (ECF No. 3). Many of Tashjian's allegations are disjointed and do not appear to have a direct relationship to his present claims. The Court therefore summarizes the key allegations against each defendant in the "Statement of Claim" portion of the complaint, *see* Compl. at 8-12, acknowledging that the pleading is not a model of clarity.

    **1.**    **363 Prospect Street**

In the complaint, Tashjian represents that the foreclosure sale of 363 Prospect was scheduled for June 10, 2019.[5] He claims that New York Mellon is the trustee of the mortgage

---

[3] For purposes of this Report and Recommendation, the Court assumes that Tashjian has standing to bring the present lawsuit. The Court notes that, to the extent that Tashjian is attempting to represent MBF or Helen's estate, he may only do so through counsel. *See* L.R. 83.5.5(c) (D. Mass.).

[4] Unless otherwise noted, all further references to docket entry numbers and document titles are to those of the present action.

[5] Tashjian later filed a document from the state court eviction proceeding which indicates that New York Mellon purchased 363 Prospect at a foreclosure auction held on June 10, 2019. (ECF No. 17 at 5).

but has given all power of attorney to Shellpoint, which services the mortgage. Tashjian states that Korde is acting as counsel for New York Mellon and/or Shellpoint in the foreclosure proceeding. According to Tashjian:

> Mellon Bank is aware of a serious Deed problem on 363 Prospect St. For unknown reasons in a completed bankruptcy of Malden [B]rook Farms, LLC and not Malden Brook Farm (no s), LLC including home and adjacent property which should have not been listed as one complete Malden Brook Farm, LLC property has created serious problems leading to Fraud since it also involves the RICO head, Dennis Minnich, Sr. and bankruptcy Trustee Johnathan Goldsmith.

*Id.* at 8. Tashjian "requests[s] cooperation with Mellon Bank to resolve this serious problem" and "request[s] support by the Court that these very significant issues be resolved directly by Mellon Bank at the Chairman Center Level." *Id.* He asks that 363 Prospect be deeded to the American Veterinary Medical Frontiers, Inc." *Id.*

Tashjian represents that Shellpoint will not communicate with him concerning 363 Prospect because the will of his deceased sister Helen has not been completely probated. According to him, Shellpoint "insisted on a legal document prepared and presented by a lawyer stating that [he is] the heir to the estate of Helen Tashjian even though her name had been replaced on the deeds by Malden Brook Farm, LLC." *Id.* at 11. Tashjian characterizes this requirement as Tashjian being "threaten[ed] and force[d] . . . into preparing any signing any document, not even accurate, with the assistance of a lawyer." *Id.*

### 2. 77 Lee Street

According to Tashjian, Deutsche Bank was the trustee of the mortgage for 77 Prospect but delegated all power of attorney to Ocwen which serviced the mortgage. Korde represented Deutsche Bank and/or Ocwen in the foreclosure proceeding. Ocwen allegedly refused to talk to Tashjian regarding 77 Lee Prospect.

8

Deutsche Bank allegedly used "devious and deceptive legal tactics" to purchase 77 Prospect at the foreclosure sale. *Id.* at 9. Tashjian claims that it was that it was "planned" in advance that Deutsche Bank would be "the one and only bidder, with NO competitive bidder." *Id.* at 10. Tashjian further claims: "in the noise and confusion with the auction and out of 77 Lee St., the auctioneer looked to the one bidder who shouted out $277,000 dollars. He then shouted out 'sold to the bank for $277,000' and everyone ran to their vehicles and left." *Id.* Tashjian represents that, at some point after the foreclosure, he spoke to a representative of Korde who told him that foreclosure decisions were made by mortgage service companies and that the "the 77 Lee St. mortgage is over as far as Korde and Associates are concerned." *Id.* at 12.

Tashjian believes that the motive of all the defendants is "Complete Destruction and Elimination of the EVIDENCE still in trailers and my home at 363 Prospect St. Also, to seize and control 77 Lee St., eliminate all Evidence and significantly weaken the June 5 & 6 Jury lawsuit filed as CRIMINAL by the West Boylston Police Department, with Chief Minnich Sr. who also heads this RICO case." *Id.* at 3. He claims that, "[i]n order to continue their lucrative lifestyle, it is vital for [the defendants] to destroy him financially, mentally, and physically." *Id.*

**II.     Discussion**

    **A.     Motion for Leave to Proceed** *in Forma Pauperis*

Upon review of Dr. Tashjian's motion for leave to proceed *in forma pauperis*, the Court concludes that he is unable to prepay the filing fee. The Court therefore GRANTS the motion.

    **B.     Review of the Complaint**

When a plaintiff seeks to file a complaint without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint pursuant to 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss a complaint *sua sponte* if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or

seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). In conducting this review, the Court liberally construes the complaint because the plaintiff is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### 1. "Short and Plain" Statement of the Claim

To state a claim upon which relief can be granted, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must be plain to give the adverse parties fair notice of the claims asserted against them. *See Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F. 3d 76, 84 (1st Cir. 2008) ("The fundamental purpose of our pleadings rules is to protect a defendant's 'inalienable right to know in advance the nature of the cause of action being asserted against him.'" (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F. 3d 1168, 1171 (1st Cir.1995))). In other words, "Rule 8(a) requires parties to make their pleadings straightforward." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Labels and conclusions are insufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the statement of the claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Salahuddin v. Cuomo*, 861 F.2d 40, 41–42 (2d Cir. 1988) (alteration in original) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

Tashjian's complaint fails to set forth a short and plain statement of his claim. Tashjian has not clearly identified the alleged misconduct of each party. While he has identified broad categories of offenses and does highlight a few particular instances of alleged misconduct, the complaint falls short of its required purpose, which is to inform each defendant of the particular acts or acts which allegedly violated the law. A complaint is not the proper vehicle for sharing

historical insights, political observations, or a plaintiff's will. Instead, it must, in an organized fashion, answer basic questions of who did what, when, and where. Tashjian is aware of this pleading standard, as it was successfully raised by the defendants in his second lawsuit. Further, it was the basis of the Court's dismissal of his third lawsuit on August 29, 2019. Notwithstanding, when the defendants in this action filed motions to dismiss and raised this same argument concerning Tashjian's pleading, Tashjian did not respond by moving to file an amended complaint. Instead, he filed numerous documents, totaling over a thirteen hundred pages, with little to no coherent explanation of their direct relevance to the claims advanced in his original complaint (to the extent those claims can be discerned). (ECF Nos. 15-19). Tashjian's failure to include a "short and plain" statement of his claim is basis enough to dismiss the complaint. *See, e.g.*, *Miranda v. United States*, 105 Fed. App'x 280, 281 (1st Cir. 2004) (upholding dismissal for noncompliance with Rule 8 where pleading was "prolix, disjointed, replete with legal conclusions" and the plaintiff's "apparent desire to stand on his defective pleading"); *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003) (affirming dismissal of complaint and stating that "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

        2.     **"Pleader is Entitled to Relief"**

In addition to setting forth a "short and plain" statement of a plaintiff's claim, a plaintiff's allegations must "show[] that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This "requires more than labels and conclusions" regarding a defendant's liability. *Twombly*, 550 U.S. at 555. Instead, the complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

11

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not as onerous as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). A plaintiff must "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Determining whether a pleading meets the plausibility requirement is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, the plaintiff's complaint does not set forth a plausible claim for relief under the federal RICO statute. To plead a civil RICO action, a plaintiff must plead specific, non-conclusory, facts which, if accepted as true, show the existence of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeMauro v. DeMauro*, 215 F.3d 1311, No. 99-1589, 2000 WL 231255, at *2 (1st Cir. 2000). For purposes of RICO liability, "an enterprise may be a legal entity . . . or it may be an informal grouping of individuals associated in fact." *United States v. Turkette*, 452 U.S. 576, 580–581 (1981). To plead a "pattern" of "racketeering activity," a plaintiff must set forth well-pled allegations of conduct violating specified federal or state statutes. Racketeering acts include (1) offenses chargeable under State law and punishable by imprisonment of more than one year that involve murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance, and (2) violations of certain federal statutes, such as the mail and wire fraud statutes. *See* 18 U.S.C. § 1961(1).

A "'pattern of racketeering activity' requires at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). However, even where parties committed

two acts of racketeering in a ten-year period, the racketeering acts do not qualify as a "pattern" unless they meet a "continuity" requirement. *See Home Orthopedics Corp. v. Rodriguez*, 781 F.3d 521, 528 (1st Cir. 2015). To satisfy this mandate, a plaintiff must plead facts showing that racketeering acts are "related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* (internal quotation marks omitted). Continuity may consist of a "closed period of repeated conduct" amounting to "continued criminal activity," or "past conduct that by its nature projects into the future with a threat of repetition." *Id.* (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989)).

Even when "trying to fish a gold coin" from Tashjian's papers, *U.S. ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d at 378 (7th Cir. 2003), his pleadings do not set forth a plausible RICO claim. The complaint and other filings by the plaintiff do not contain sufficient factual material from which the Court can reasonably infer that the defendants' alleged actions were the conduct of an enterprise through a pattern of racketeering activity. To the extent that Dr. Tashjian has set forth well-pled allegations of misconduct by any party, the Court cannot reasonably infer therefrom that the defendants were an enterprise—a legal entity or an informal grouping of individuals associated in fact. Further, the factual allegations are so obfuscated, the Court cannot reasonably infer that the alleged misconduct constituted a "pattern."

### 3.     **New York Mellon**

New York Mellon has not responded to the complaint, nor has it been obliged to do so because summonses have not issued. Notwithstanding, whether by virtue of its inherent power to manage its docket, or its statutory authority under 28 U.S.C. § 1915(e)(2), the Court may consider whether Tashjian has stated a claim for relief against New York Mellon. For the reasons stated above concerning the claims against the other defendants, this Court concludes that Tashjian has failed to state a claim upon which relief may be granted.

The Court can imagine the difficulty of someone in Tashjian's situation, whose family lived for decades on the land that became MBF.  According to Tashjian, his grandparents

> "came to America as Armenian immigrants from a Nation suffered from a Genocide. They came penniless and the only treasure they brought with them was Mulberry branches to plant in America where their hope was to become successful farmers and raise an educated American family. They were able to locate a track of about 40 acres at 378 Prospect St. which was a dirt cart road. . . . With a team of horses and wagon, my grandfather purchased lumber from the demolished buildings and built a home, barn, and shed which is now 378 Prospect St.  My grandparents had six children, three daughters and three sons, one who was my mother. The 363 Prospect St. home was designed and built by my father in which my sister, brother and I lived until adulthood . . . .The entire family was very patriotic and involved in West Boylston community affairs and government, in addition to religion with a kindness and compassion for all. We all joined together including the cows, horses, dogs, cats for a better-quality life for all. . . . [A]s family members deceased, any property or assets would just continue on in the family . . . . All the units of Malden Brook Farm should be again joined together more than personal, sentimental reasons, but for the best interest now and future decades for West Boylston, MA and America.  In life, there are only a few that can be trusted like I treasured with my deceased family members and I will make certain AVMF is structured for the dedicated continuity into the ages.

Compl. at 15-16.

While the Court does not have any reason to doubt the veracity of Tashjian's recitation of his family history or the sincerity of his aspirations, the reality is that the disposition of the MBF bankruptcy estate has been completed, and holders of the notes and mortgages for 77 Lee and 363 Prospect have exercised their rights of foreclosure.  The record of the bankruptcy proceedings suggest that 77 Lee was never a part of the bankruptcy estate and that the foreclosure occurred because it secured a defaulted note executed by Helen.  Similarly, the bankruptcy proceedings suggest that 363 Prospect, though abandoned by the MBF bankruptcy estate, secured another defaulted note executed by Helen.  Notwithstanding the completion of MBF's bankruptcy proceeding, whether MBF or Helen held the deed to 363 Prospect would not ultimately impact the ability of the holder of the mortgage and underlying note to exercise its right of foreclosure.  See *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (holding that

discharge in bankruptcy extinguishes only the personal liability of the debtor, and "a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy").

Assuming that the disposition of the bankruptcy proceeding would not necessarily have *res judicata* effect for all claims concerning the manner in which the foreclosures of 77 Lee and 363 Prospect occurred, in the absence of any clarity in Tashjian's complaint in this action concerning the defendants' alleged misconduct, the Court cannot reasonably infer that the defendants acted unlawfully.

This is the fourth action in which Tashjian has tried to construe the conduct of the parties involved in the bankruptcy proceedings and property foreclosures as actionable misconduct, and this is the fourth time he has failed to do so.

### III. Conclusion

Accordingly:

1. The motion for leave to proceed *in forma pauperis* (ECF No. 4) is GRANTED.

2. The undersigned recommends that the defendants' motions to dismiss (ECF Nos. 6, 10, 13) be GRANTED.

3. The undersigned recommends that the claims against New York Mellon be dismissed.[6]

           /s/David H. Hennessy
           David H. Hennessy
           United States Magistrate Judge

---

[6] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604-05 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).